**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FELICIA WATSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUFFOLK FEDERAL CREDIT UNION,<br><br>Defendant. | Civil Action No. 20-cv-1531<br><br><br>**JURY TRIAL DEMAND** |

**CLASS ACTION COMPLAINT**

Plaintiff Felicia Watson, on behalf of herself and all persons similarly situated brings this class action complaint against Suffolk Federal Credit Union ("Suffolk" or "Credit Union"), and alleges the following:

**INTRODUCTION**

1. When consumers open a checking account with their Credit Union, they have to enter into a standard contract written by the Credit Union and its lawyers. All the Credit Union has to do is honor the contract it wrote and comply with the terms it dictated.

2. Suffolk promises its customers that if their account balance drops too low to cover a particular "item," such as a check, withdrawal, or service charge, Suffolk will charge the customer a single $32 insufficient funds fee ("NSF Fee") per item. But as Ms. Watson and consumers all over the country have discovered, Suffolk doesn't abide by this promise. Instead, Suffolk routinely charges its customers multiple NSF Fees for the same item, driving their account balances deeper into negative territory.

1

3. Suffolk's customers have been injured by the Credit Union's improper practices to the tune of millions of dollars bilked from their accounts in violation Suffolk's clear contractual commitments.

4. Ms. Watson, on behalf of herself and two Classes of similarly situated consumers, seeks to end Suffolk's abusive and predatory practices and force it to refund all of these improper charges. She asserts claims for breach of contract; breach of the covenant of good faith and fair dealing; violation of state consumer protection law; and/or unjust enrichment, and seeks damages, restitution, and injunctive relief, as set forth more fully below.

## PARTIES

5. Felicia Watson is a resident of Brooklyn, New York, and holds a Suffolk checking account.

6. Defendant Suffolk Federal Credit Union is engaged in the business of providing retail Credit Union services to consumers, including Plaintiff and members of the putative Classes. Suffolk has its headquarters in Medford, New York.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Classes are comprised of at least 100 members; (2) At least one member of the proposed classes resides outside of New York; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Suffolk is subject to personal jurisdiction here and regularly conducts business in this District, and because

a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

I. **SUFFOLK CHARGES MORE THAN ONE NSF FEE ON THE SAME ITEM**

9. Suffolk's Account Documents allow it to charge a *single* $32 NSF Fee or a *single* $32 OD Fee when an item is returned for insufficient funds or paid despite insufficient funds.

10. Suffolk breaches its contract by charging more than one $32 NSF Fee on the same item, since the contract explicitly states—and reasonable consumers understand—that the same item can only incur a single NSF or OD Fee.

11. Suffolk's abusive practices are not standard within the financial services industry. Indeed, major banks like JP Morgan Chase—the largest consumer bank in the country—charge one NSF Fee per item, even if that item is resubmitted for payment multiple times.[1] And while some other banks credit unions engage in the same practices as Suffolk, they clearly disclose those charges in the deposit agreements with their customers.

12. Suffolk's Deposit Agreement does not say that Suffolk repeatedly charges customers multiple NSF fees on a single item. To the contrary, the Deposit Agreement indicates it will only charge a single NSF Fee or OD Fee on an item.

   A. **Plaintiff Watson's Experience.**

13. In support of her claims, Plaintiff offers examples of fees that should not have been assessed against her checking account. As alleged below, Suffolk: (a) reprocessed previously

---

[1] As indicated by Chase's printed disclosures, an "item" maintains its integrity even if multiple processes are affected on it: "If we return the same item multiple times, we will only charge you one Returned Item Fee for that item within a 30-day period."

3

declined items; and (b) charged an additional fee upon reprocessing, for a total assessment of *$64 in fees on each item*.

14. On June 17, 2019, Plaintiff Watson attempted a payment to American Express.

15. Suffolk rejected payment of that item due to insufficient funds in Plaintiff's account and charged her a $32 NSF Fee for doing so. Plaintiff does not dispute this initial fee, as it is allowed by Suffolk's Deposit Agreement.

16. Unbeknownst to Plaintiff, and without her request to Suffolk to reprocess the item, however, the next day, on June 18, 2019, Suffolk processed the same item yet again, with Suffolk labeling the transaction a RETRY PYMT on her statements. Again, Suffolk returned the item unpaid and charged Plaintiff *another* $32 NSF Fee for doing so.

17. And again, the very next day, unbeknownst to Plaintiff, on June 19, 2019, Suffolk processed the same item yet again, with Suffolk labeling the transaction a RETRY PYMT on her statements. And again, Suffolk returned the item unpaid and charged Plaintiff *another* $32 NSF Fee for doing so.

18. In sum, Suffolk assessed Plaintiff $96 in fees in its failed effort to process a single payment.

19. The same pattern occurred on June 3, 2019 and June 5, 2019, with respect to an attempted payment, and on April 10, 2019 and April 16, 2019 with respect to an attempted payment to Paypal.

**B.      The Imposition of Multiple NSF Fees on a Single Item Violates Suffolk's Express Promises and Representations.**

20. Suffolk's Account Documents state that the Credit Union will assess a single fee of $32 for an item that is returned due to insufficient funds.

21. According to the Fee Schedule, at most a *single* fee will be assessed when an "item" is returned or paid into overdraft:

| Non-Sufficient Funds | $32 | Per item |

Fee Schedule, Ex. A (emphasis added).

22. The same check, automatic bill payment, or other electronic payment on an account is not a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit the item.

23. The Account Documents do not say that the same item is eligible to incur multiple fees. Indeed, the Suffolk Deposit Agreement states:

> If, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a check, draft, item, transaction or other items posted to your account plus any applicable fee ("overdraft"), we may pay or return the overdraft. The credit union's determination of an insufficient available account balance may be made at any time between presentation and the credit union's midnight deadline with only one review of the account required. We do not have to notify you if your account does not have sufficient available funds to pay an overdraft. Your account may be subject to a charge for each overdraft regardless of whether we pay or return the overdraft.

Deposit Agreement, Ex. B at 3.

24. The disclosures described above never discuss a circumstance where Suffolk may assess multiple fees for an item that was returned for insufficient funds and later reprocessed one or more times and returned again.

25. Further, the Deposit Agreement never defines the word "item."

26. Even if Suffolk reprocesses an instruction for payment, it is still the same item. The Credit Union's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

27. As alleged herein, Plaintiff took only a single action to make a single payment; she therefore created only one item and may be charged only a single fee.

5

28. In sum, Suffolk promises that one $32 NSF Fee or one $32 OD Fee will be assessed "per item," and this must mean all iterations of the same instruction for payment. As such, Suffolk breached the contract when it charged more than one fee per item.

29. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Credit Union will either pay (resulting in an overdraft item) or return (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Suffolk disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Suffolk customers ever agree to such fees.

30. Customers reasonably understand, based on the language of the Account Documents, that the Credit Union's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees. In other words, it is always the same item.

31. Banks and credit unions like Suffolk that employ this abusive multiple fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Suffolk never did.

32. For example, First Hawaiian Bank engages in the same abusive practices as Suffolk, but at least currently discloses it in its online Banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www. fhb.com/ en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_ RXP1.pdf (last accessed September 25, 2019) (emphasis added).

33. Klein Bank similarly states in its online banking agreement:

[W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer and Small Business Online Access Agreement*, Klein Bank ¶ H, https://www.klein bankonline.com/bridge/disclosures/ib/disclose.html (last accessed September 25, 2019) (emphasis added).

34. Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection: "Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds." *Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Feb. 15, 2019), https://www.centralpacificbank.com/PDFs/Miscellaneous-Fee-Schedule.aspx.

35. BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item."

7

36. Suffolk provides no such disclosure, and in so doing, breaches its contracts with accountholders, engages in bad faith conduct, and deceives its accountholders.

### C. The Imposition of Multiple NSF Fees on a Single Item Breaches Suffolk's Duty of Good Faith and Fair Dealing.

37. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Credit Union is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Credit Union has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties. Here—in the adhesion agreements Suffolk foisted on Plaintiff and its other customers— Suffolk has provided itself numerous discretionary powers affecting customers' Credit Union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Credit Union abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

38. Suffolk exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it defines "item" in a way that directly leads to more NSF Fees. Further, Suffolk abuses the power it has over customers and their Credit Union accounts and acts contrary to their reasonable expectations under the Deposit Agreement. This is a breach of the Credit Union's implied covenant to engage in fair dealing and act in good faith.

8

39. By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one NSF Fee on a single item, Suffolk breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

40. It was bad faith and totally outside Plaintiff's reasonable expectations for Suffolk to use its discretion to assess two or three NSF Fees for a single attempted payment.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated pursuant to Federal Rule 23. The Classes include:

> All persons who, within the applicable statute of limitations period, were charged multiple fees on the same item in a Suffolk account (the "National Class").

> All persons in the state of New York who, within the applicable statute of limitations period, were charged multiple fees on the same item in a Suffolk account (the "New York Class").

42. Excluded from the Classes are Suffolk and its subsidiaries, affiliates, and any entities in which it has a controlling interest, and each of the officers, directors, immediate family members, legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

43. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add subclasses if necessary before this Court determines whether certification is appropriate.

44. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual Class members because Suffolk has acted on

grounds generally applicable to the Classes. Such common legal or factual questions include, but are not limited to:

    a)    Whether Suffolk improperly charged NSF Fees;

    b)    Whether any of the conduct enumerated above violates the contract;

    c)    Whether any of the conduct enumerated above violates the covenant of good faith and fair dealing;

    d)    Whether any of the conduct enumerated above constitutes unjust enrichment; and

    e)    The appropriate measure of damages.

45. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identities of whom are within the exclusive knowledge of and can be ascertained only by resort to Suffolk's records. Suffolk has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

46. It is impracticable to bring Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

47. Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Suffolk, as described herein.

48. Plaintiff is more than an adequate representative of the Classes in that Plaintiff has a Suffolk checking account and has suffered damages as a result of Suffolk's contract violations, Suffolk's violations of the covenant of good faith and fair dealing, and Suffolk's unjust enrichment. In addition:

   a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

   b) There is no conflict of interest between Plaintiff and the unnamed members of the Classes;

   c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

   d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

49. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

50. Suffolk has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

51. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Classes)

52. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

53. Plaintiff and Suffolk contracted for checking account services, as embodied in the Deposit Agreement and Fee Schedule.

54. Defendant mischaracterized in the Account Documents its true NSF Fee practices and breached the express terms of the Account Documents.

55. No contract provision authorizes Defendant to charge more than one NSF Fee on the same item.

56. Defendant has breached its contracts with Plaintiff and the Classes through its NSF fee policies and practices as alleged herein.

57. Plaintiff and members of the putative Classes have performed all of the obligations on them pursuant to the Credit Union's agreements.

58. Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches.

## COUNT II
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and the Classes)

59. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

60. Plaintiff and Suffolk contracted for checking account services, as embodied in the Deposit Agreement and Fee Schedule.

61. Under New York law and the states wherein Suffolk does business, a covenant of good faith and fair dealing is implied in every contract. The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

62. This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

63. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely

the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

64. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes her conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

65. Suffolk breached the covenant of good faith and fair dealing through its NSF fee policies and practices as explained herein.

66. Each of Defendant's actions was done in bad faith and was arbitrary and capricious.

67. Plaintiff and members of the putative Classes have performed all of the obligations imposed on them pursuant to the Deposit Agreement.

68. Plaintiff and members of the putative Classes have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

## COUNT III
## UNJUST ENRICHMENT
## (In the Alternative to COUNT I and COUNT II)
## (On Behalf of Plaintiff and the Classes)

69. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

70. This Count is brought solely in the alternative to Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims. Plaintiff acknowledges that her breach of contract claim cannot be tried along with unjust enrichment.

71. To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

72. Plaintiff and the Classes conferred a benefit on Defendant when they paid Defendant the fees that were not disclosed or allowed for in the in the Account Documents.

73. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

74. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

75. Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## COUNT IV
### New York General Business Law, N.Y. Gen. Bus. Law § 349 *et seq*.
**(On Behalf of the New York Class)**

76. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

77. Suffolk's practice of charging more than one NSF Fee on the same item violates New York General Business Law § 349 ("NYGBL § 349").

78. NYGBL § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

79. As one of the largest Credit Unions in the United States with its headquarters and multiple branch locations in New York, Suffolk conducted business, trade or commerce in New York State.

80. In the conduct of its business, trade, and commerce, and in furnishing services in New York, Suffolk's actions were directed at consumers.

46. In the conduct of its business, trade, and commerce, and in furnishing services in New York, Suffolk engaged in deceptive, unfair, and unlawful acts or practices, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

    a. Suffolk misrepresented material facts, pertaining to the sale and/or furnishing of banking services to the New York Class by representing and advertising that it would only assess a single $32 NSF Fee for a single item; and

    b. Suffolk omitted, suppressed, and concealed the material fact that it would charge multiple $32 NSF Fees for a single item.

96. Suffolk systematically engaged in these deceptive, misleading, and unlawful acts and practices, to the detriment of Plaintiff and members of the New York Class.

97. Suffolk willfully engaged in such acts and practices, and knew that it violated NYGBL § 349 or showed reckless disregard for whether they violated NYGBL § 349.

98. As a direct and proximate result of Suffolk's deceptive trade practices, members of the New York Class suffered injury and/or damages, including multiple $32 NSF fees charged on a single item, additional charges due to their improperly reduced balances, and the loss of the benefit of their respective bargains with Suffolk.

99. Had Plaintiff known she could be charged more than one NSF fee on a single item, she would have made different payment decisions so as to avoid incurring such fees or moved her funds to a different Credit Union.

100. As a result of Suffolk's violations of NY GBL § 349, Plaintiff and members of the putative Classes have paid and will continue to pay excessive fees to Suffolk. Accordingly, they have suffered and will continue to suffer actual damages.

101. Accordingly, Plaintiff and New York Class members are entitled to relief under

N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Classes pursuant to Federal Rule of Civil Procedure 23, appointing the Plaintiff as representative of the Classes, and appointing counsel for Plaintiff as lead counsel for the Classes;

B. Declaring that Suffolk's policies and practices as described herein constitute a breach of contract and a breach of the covenant of good faith and fair dealing or unjust enrichment;

C. Enjoining Suffolk from the wrongful conduct as described herein;

D. Awarding restitution of all fees at issue paid to Suffolk by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

E. Compelling disgorgement of the ill-gotten gains derived by Suffolk from its misconduct;

F. Awarding actual and/or compensatory damages in an amount according to proof;

G. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

H. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

I. Awarding such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated:  March 24, 2020            Respectfully submitted,

**REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

Jeffrey D. Kaliel
Sophia G. Gold
**KALIEL PLLC**
1875 Connecticut Ave. NW 10th Floor
Washington, D.C.  20009
Telephone: (202) 340-4783
*jkaliel@kalielpllc.com*
*sgold@kalielplllc.com*

*Counsel for Plaintiff and the Proposed Classes*