

3681 Horseblock Road
P.O. Box 9005
Medford, NY 11763-9005
Phone: (631) 924-8000
www.suffolkfcu.org



## MEMBERSHIP AND ACCOUNT AGREEMENT

This Agreement covers the rights and responsibilities concerning your accounts and the rights and responsibilities of the credit union providing this Agreement (credit union). In this Agreement, the words "you" and "yours" mean anyone who signs an Account Card or Account Change Card (Account Card or any other account opening document). The words "we," "us," and "our" mean the credit union. The word "account" means any one or more share or other accounts you have with the credit union.

Your account type(s) and ownership features are designated on your Account Card. By signing an Account Card, each of you, jointly and severally, agree to the terms and conditions in this Agreement and Account Card, the Funds Availability Policy Disclosure, Truth-in-Savings Disclosure, Electronic Funds Transfer Agreement and Disclosure, Privacy Notice Disclosure, any Account Deposit Receipt accompanying this Agreement, the credit union's bylaws and policies, and any amendments to these documents from time to time which collectively govern your membership and accounts.

**1. MEMBERSHIP ELIGIBILITY -** To join the credit union you must meet the membership requirements including purchase and maintenance of the minimum required share(s) ("membership share") as set forth in the credit union's bylaws. You authorize us to check your account, credit, and employment history, and obtain reports from third parties, including credit reporting agencies, to verify your eligibility for the accounts and services you request.

**2. INDIVIDUAL ACCOUNTS -** An individual account is an account owned by one member (individual, corporation, partnership, trust or other organization) qualified for credit union membership. If the account owner dies, the interest passes, subject to applicable law, to the account owner's estate or Payable on Death (POD) beneficiary/payee or trust beneficiary, subject to other provisions of this Agreement governing our protection for honoring transfer and withdrawal requests of an owner or owner's agent prior to notice of an owner's death and to any security interest or pledge granted by the account owner and subject to our statutory lien rights.

**3. JOINT ACCOUNTS -** A joint account is an account owned by two or more persons.

**a. Rights of Survivorship.** Unless otherwise stated on the Account Card, a joint account includes rights of survivorship. This means when one owner dies, all sums in the account will pass to the surviving owner(s). For a joint account without rights of survivorship, the deceased owner's interest passes to his or her estate. A surviving owner's interest is subject to the credit union's statutory lien for the deceased owner's obligations, and to any security interest or pledge granted by a deceased owner, even if a surviving owner did not consent to it.

**b. Control of Joint Accounts.** Any owner is authorized and deemed to act for any other owner(s) and may instruct us regarding transactions and other account matters. Each owner guarantees the signature of any other owner(s). Any owner may withdraw all funds, stop payment on items, transfer, or pledge to us all or any part of the shares without the consent of the other owner(s). We have no duty to notify any owner(s) about any transaction. We reserve the right to require written consent of all owners for any change to or termination of an account. If we receive written notice of a dispute between owners or inconsistent instructions from them, we may suspend or terminate the account and require a court order or written consent from all owners to act.

**c. Joint Account Owner Liability.** If an item deposited in a joint account is returned unpaid, a joint account is overdrawn, or if we do not receive final payment on a transaction, the owners, jointly and severally, are liable to us for the amount of the returned item, overdraft, or unpaid amount and any charges, regardless of who initiated or benefited from the transaction. If any account owner is indebted to us, we may enforce our rights against any account of the indebted owner, including all funds in the joint account regardless of who contributed the funds in the account.

**4. POD/TRUST ACCOUNT DESIGNATIONS -** A Payable on Death (POD) account or trust account designation is an instruction to the credit union that an individual or joint account so designated is payable to the owner(s) during his, her or their lifetimes and, when the last account owner dies, payable to all and surviving POD or trust beneficiaries/payees. If there is more than one surviving beneficiary/payee, the account is owned jointly by such beneficiaries/payees without rights of survivorship upon the death of the last account owner. Any POD or trust beneficiary/payee designation shall not apply to Individual Retirement Accounts (IRAs). We are not obligated to notify any beneficiary/payee of the existence of any account or the vesting of the beneficiary/payee's interest in any account, except as otherwise provided by law. This paragraph does not apply to an account held on behalf of or held in the name of a trust.

**5. ACCOUNTS FOR MINORS -** We may require any account established by a minor to be a joint account with an owner who has reached the age of majority under state law and who shall be jointly and severally liable to us for any returned item, overdraft, or unpaid charges or amounts on such account. We may pay funds directly to the minor without regard to his or her minority. Unless a guardian or parent is an account owner, the guardian or parent shall not have any account access rights. We have no duty to inquire about the use or purpose of any transaction. We will not change the account status when the minor reaches the age of majority unless authorized in writing by all account owners.

**6. UNIFORM TRANSFERS/GIFTS TO MINORS ACCOUNT -** A Uniform Transfers/Gifts to Minors Account (UTMA/UGMA) is an individual account created by a custodian who deposits funds as an irrevocable gift to a minor. The minor to whom the gift is made is the beneficiary of the custodial property in the account. The custodian has possession and control of the account for the exclusive right and benefit of the minor and barring a court order otherwise, is the only party entitled to make deposits, withdrawals, or close the account. We have no duty to inquire about the use or purpose of any transaction. If the custodian dies, we may suspend the account until we receive instructions from any person authorized by law to withdraw funds or a court order authorizing withdrawal.

**7. AGENCY DESIGNATION ON AN ACCOUNT -** An agency designation on an account is an instruction to us that the owner authorizes another person to make transactions as agent for the account owner regarding the accounts designated. An agent has no ownership interest in the account(s) or credit union voting rights. We have no duty to inquire about the use or purpose of any transaction made by the agent.

**8. DEPOSIT OF FUNDS REQUIREMENTS -** Funds may be deposited to any account, in any manner approved by the credit union in accordance with the requirements as set forth in the Truth-in-Savings Disclosure. Deposits made by mail, at night depositories or at unstaffed facilities are not our responsibility until we receive them. We reserve the right to refuse or to return any deposit.

**a. Endorsements.** We may accept transfers, checks, drafts, and other items for deposit into any of your accounts if they are made payable to, or to the order of, one or more account owners even if they are not endorsed by all payees. You authorize us to supply missing endorsements of any owners if we choose. If a check, draft or item that is payable to two or more persons is ambiguous as to whether it is payable to either or both, we will process the check, draft or item as though it is payable to all such persons. If an insurance, government, or other check or draft requires an endorsement, we may require endorsement as set forth on the item. Endorsements must be made on the back of the share draft or check within 1½ inches from the top edge, although we may accept endorsements outside this space. However, any loss we incur from a delay or processing error resulting from an irregular endorsement or other markings by you or any prior endorser will be your responsibility.

**b. Collection of Items.** We act only as your agent and we are not responsible for handling items for deposit or collection beyond the exercise of ordinary care. We are not liable for the negligence of any correspondent or for loss in transit, and each correspondent will only be liable for its own negligence. We may send any item for collection. Items drawn on an institution located outside the United States are handled on a collection basis only. You waive any notice of nonpayment, dishonor, or protest regarding items we purchase or receive for credit or collection to your account. We reserve the right to pursue collection of previously dishonored items at any time, including giving a payor financial institution extra time beyond any midnight deadline limits.

**c. Restrictive Legends.** Some checks and drafts contain restrictive legends or similar limitations on the front of the item. Examples of restrictive legends include "two signatures required", "void after 60 days" or "not valid over $500." We are not liable for payment of any check or draft contrary to a restrictive legend or other limitation contained in or on the item unless we have specifically agreed in writing to the restrictions or limitations.

**d. Final Payment.** All items or Automated Clearing House (ACH) transfers credited to your account are provisional until we receive final payment. If final payment is not received, we may charge your account for the amount of such items or ACH transfers and impose a return item charge on your account. Any collection fees we incur may be charged to your account. We reserve the right to refuse or return any item or funds transfer.

**e. Direct Deposits.** We may offer preauthorized deposits (e.g., payroll checks, Social Security or retirement checks, or other government checks) or preauthorized transfers from other accounts. You must authorize direct deposits or preauthorized transfers by filling out a separate form. You must notify us at least 30 days in advance to cancel or change a direct deposit or transfer option. If your account is overdrawn, you authorize us to deduct the amount your account is overdrawn from any deposit, including deposits of government payments or benefits. Upon a bankruptcy filing, unless you cancel the authorization, we will continue applying payments from direct deposits in accordance with your authorization on file with us. If we are required to reimburse the U.S. Government for any benefit payment directly deposited into your account, we may deduct the amount returned from any of your accounts, unless prohibited by law.

**f. Crediting of Deposits.** Deposits made after the deposit cut-off time and deposits made on either holidays or days that are not our business days will be credited to your account on the next business day.

**9. ACCOUNT ACCESS -**

**a. Authorized Signature.** Your signature on the Account Card authorizes your account access. We will not be liable for refusing to honor any item or instruction if we believe the signature is not genuine. If you have authorized the use of a facsimile signature, we may honor any check or draft that appears to bear your facsimile signature even if it was made by an unauthorized person. You authorize us to honor transactions initiated by a third person to whom you have given your account number even if you do not authorize a particular transaction.

**b. Access Options.** You may withdraw or transfer funds from your account(s) in any manner we permit (e.g., at an automated teller machine, in person, by mail, Internet access, automatic transfer, or telephone, as applicable). We may return as unpaid any check or draft drawn on a form we do not provide, and you are responsible for any loss we incur handling such a check or draft. We have the right to review and approve any form of power of attorney and may restrict account withdrawals or transfers. We are under no obligation to honor any power of attorney.

c. **Credit Union Examination.** We may disregard information on any check or draft other than the signature of the drawer, the amount and any magnetic encoding. You agree we do not fail to exercise ordinary care in paying an item solely because our procedures do not provide for sight examination of items.

**10. ACH & WIRE TRANSFERS -** Except as amended by this Agreement, electronic funds transfers we permit that are subject to Article 4A of the Uniform Commercial Code will be subject to such provisions of the Uniform Commercial Code as enacted by the state where the main office of the credit union is located. We may execute certain requests for electronic funds transfers by Fedwire. Fedwire transactions are subject to Federal Reserve Board Regulation J. You may order electronic funds transfers to or from your account. We will debit your account for the amount of an electronic funds transfer and will charge your account for any fees related to the transfer. Unless we agree otherwise in writing, we reserve the right to refuse to execute any order to transfer funds to or from your account. We are not obligated to execute any order to transfer funds out of your account if the amount of the requested transfer plus applicable fees exceeds the available funds in your account. We are not liable for errors, delays, interruptions or transmission failures caused by third parties or circumstances beyond our control including mechanical, electronic or equipment failure. We will not provide you with next day notice of ACH, wire transfers and other electronic payments credited to your account. You will receive notice of such credits on your account statements. You may contact us to determine whether a payment has been received. If we fail to properly execute a payment order, and such action results in a delay in payment to you, we will pay you dividends or interest for the period of delay as required by applicable law. The dividends or interest paid to you will be based on the lowest nominal dividend or interest rate we were paying on any account during that period. Payment orders we accept will be executed within a reasonable time of receipt but may not necessarily be executed on the date they are received. Cut-off times may apply to the receipt, execution and processing of funds transfers, payment orders, cancellations, and amendments and if received after a cut-off time, may be treated as having been received on the next following funds transfer business day. Information about any cut-off times is available upon request. When you initiate a wire transfer, you may identify the recipient and any financial institution by name and by account or identifying number. The credit union and any other financial institutions facilitating the transfer may rely strictly on the account or identifying number even if the number identifies a different person or financial institution. Any account owner may amend or cancel a payment order even if that person did not initiate the order. We may refuse requests to amend or cancel a payment order that we believe will expose the credit union to liability or loss. Any request to amend or cancel a payment order that we accept will be processed within a reasonable time after it is received. You agree to hold us harmless from and indemnify us for all losses and expenses resulting from any actual or attempted amendment or cancellation of a payment order. We may require you to follow a security procedure to execute a payment order or certain electronic funds transfer transactions. We will notify you of any such security procedures and you agree that our security procedures are commercially reasonable.

**11. ACCOUNT RATES AND FEES -** We pay account earnings and assess fees against your account as set forth in the Truth-in-Savings Disclosure or Schedule of Fees and Charges. We may change the Truth-in-Savings Disclosure or Schedule of Fees and Charges at any time and will notify you as required by law.

**12. TRANSACTION LIMITATIONS -**

a. **Withdrawal Restrictions.** We will pay checks or drafts, permit withdrawals and make transfers from available funds in your account. The availability of funds in your account may be delayed as described in our Funds Availability Policy Disclosure. We may also pay checks or drafts, permit withdrawals and make transfers from your account from insufficient available funds if you have established an overdraft protection plan or, if you do not have such a plan with us, according to our overdraft payment policy. Members may opt-out of Courtesy Pay Overdraft Protection at any time, by informing us in writing.

We may refuse to allow a withdrawal in some situations, and will advise you accordingly; for example: (1) a dispute between account owners (unless a court has ordered the credit union to allow the withdrawal); (2) a legal garnishment or attachment is served; (3) the account secures any obligation to us; (4) required documentation has not been presented; or (5) you fail to repay a credit union loan on time. We may require you to give written notice of seven (7) days to 60 days before any intended withdrawals.

b. **Transfer Limitations.** We may limit the dollar amount or the number of transfers from your account. Please consult your Truth-in-Savings Disclosure or your Electronic Funds Transfer Agreement and Disclosure.

**13. CERTIFICATE ACCOUNTS -** Any time deposit, term share, share certificate, or certificate of deposit account allowed by state law (certificate account), whichever we offer, is subject to the terms of this Agreement, the Truth-in-Savings Disclosure and Account Deposit Receipt for each account, the terms of which are incorporated herein by reference.

**14. OVERDRAFTS -**

a. **Payment of Overdrafts.** If, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a check, draft, item, transaction or other items posted to your account plus any applicable fee ("overdraft"), we may pay or return the overdraft. The credit union's determination of an insufficient available account balance may be made at any time between presentation and the credit union's midnight deadline with only one review of the account required. We do not have to notify you if your account does not have sufficient available funds to pay an overdraft. Your account may be subject to a charge for each overdraft regardless of whether we pay or return the overdraft. Except as otherwise agreed in writing, if we exercise our right to use our discretion to pay an overdraft, we do not agree to pay overdrafts in the future and may discontinue covering overdrafts at any time without notice. If we pay an overdraft or impose a fee that overdraws your account, you agree to pay the overdrawn amount in

accordance with your overdraft protection plan or, if you do not have such a plan, in accordance with our overdraft payment policy.

b. **Order of Payments.** Checks, drafts, items and other transactions may not be processed in the order that you make them or in the order that we receive them. We may, at our discretion, pay a check, draft or item and execute other transactions on your account in any order we choose. The order in which we process checks, drafts and items and execute other transactions on your account may affect the total amount of overdraft fees that may be charged to your account. Please contact us if you have questions about how we pay checks or drafts and process transfers and withdrawals.

15. **POSTDATED AND STALEDATED DRAFTS** - You agree not to issue any check or draft that is postdated. If you do issue a check or draft that is payable on a future date and we pay it before that date, you agree that we shall have no liability to you for payment. You agree not to deposit checks, drafts, or other items before they are properly payable. We are not obligated to pay any check or draft drawn on your account that is presented more than six (6) months past its date.

16. **STOP PAYMENT ORDERS -**

a. **Stop Payment Order Request.** Any owner may request a stop payment order on any check or draft drawn on the owner's account. To be binding the order must be in writing, dated, signed, and must accurately describe the check or draft including the exact account number, check or draft number and the exact amount of the check or draft. This exact information is necessary for the credit union's computer to identify the check or draft. If we receive incorrect or incomplete information, we will not be responsible for failing to stop payment on the check or draft. In addition, we must receive sufficient advance notice of the stop payment order to allow us a reasonable opportunity for us to act on it. If we recredit your account after paying a check or draft over a valid and timely stop payment order, you agree to sign a statement describing the dispute with the payee, to assign to us all of your rights against the payee or other holders of the check or draft and to assist us in any legal action.

b. **Duration of Order.** You may make an oral stop payment order which will lapse within 14 calendar days unless confirmed in writing within that time. Written stop payment orders are effective for six (6) months and may be renewed for additional six (6) month periods by requesting in writing that the stop payment order be renewed within a period which the stop payment order is effective. We are not required to notify you when a stop payment order expires.

c. **Liability.** Fees for stop payment orders are set forth in the Truth-in-Savings Disclosure or Schedule of Fees and Charges. Payment on any certified check, cashier's check, teller's check, or any other check, draft, or payment guaranteed by us may be stopped only according to the provisions of Section 4-403 of the Uniform Commercial Code as enacted by the state of New York. Although payment of an item may be stopped, you may remain liable to any item holder, including us. You agree to indemnify and hold the credit union harmless from all costs, including attorney's fees, damages or claims related to our refusing payment of an item, including claims of any joint account owner, payee, or endorsee in failing to stop payment of an item as a result of incorrect information provided by you.

17. **CREDIT UNION LIABILITY -** If we do not properly complete a transaction according to this Agreement, we will be liable for your losses or damages not to exceed the amount of the transaction, except as otherwise provided by law. We will not be liable if: (1) your account contains insufficient funds for the transaction; (2) circumstances beyond our control prevent the transaction; (3) your loss is caused by your or another financial institution's negligence; or (4) your account funds are subject to legal process or other claim. We will not be liable for consequential damages, except liability for wrongful dishonor. We exercise ordinary care if our actions or non-actions are consistent with applicable state law, Federal Reserve regulations and operating letters, clearinghouse rules, and general financial institution practices followed in the area we serve. You grant us the right, in making payments of deposited funds, to rely exclusively on the form of the account and the terms of this Agreement. Any conflict between what you or our employees may say or write will be resolved by reference to this Agreement.

18. **CHECKS PRESENTED FOR PAYMENT IN PERSON -** We may refuse to accept any check or draft drawn on your account that is presented for payment in person. Such refusal shall not constitute a wrongful dishonor of the check or draft and we shall have no liability for refusing payment.

19. **REMOTELY CREATED CHECKS -** For purposes of this paragraph, "account" means a transaction account, credit account, and any other account on which checks (share drafts) may be drawn. A remotely created check is a check created by someone other than the person on whose account the check is drawn. A remotely created check is generally created by a third party payee as authorized by the owner of the account on which the check is drawn. Authorization is made over the telephone or through online communication. The owner of the account does not sign a remotely created check. In place of the owner's signature, the remotely created check usually bears a statement that the owner authorized the check or bears the owner's printed or typed name. If you authorize a third party to draw a remotely created check against your account, you may not later revoke your authorization. It is your responsibility to resolve any authorization issues directly with the third party. We are not required to credit your account, and may charge against your account any remotely created check for which the third party has proof of your authorization.

20. **PLEDGE/STATUTORY LIEN -** Unless prohibited by law, you pledge and grant as security for all obligations you may have now or in the future, except obligations secured by your principal residence, all shares and dividends and all deposits and interest, if any, in all accounts you have with us now and in the future. If you pledge a specific dollar amount in your account for a loan, we will freeze the funds in your account(s) to the extent of the outstanding balance of the loan or, if greater, the amount of the pledge if the loan is a revolving loan. Otherwise, funds in your pledged account(s) may be withdrawn unless you are in default. Federal or state law, depending upon whether we have a federal or state charter, gives us a lien on all shares and dividends and all deposits and interest, if any, in accounts you have with us now

and in the future. Except as limited by state or federal law, the statutory lien gives us the right to apply the balance of all your accounts to any obligation on which you are in default. After you are in default, we may exercise our statutory lien rights without further notice to you.

Your pledge and our statutory lien rights will allow us to apply the funds in your account to what you owe when you are in default, except as limited by state or federal law. If we do not apply the funds in your account(s) to satisfy your obligation, we may place an administrative freeze on your account(s) in order to protect our statutory lien rights and may apply the funds in your account(s) to the amount you owe us at a later time. The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security. By not enforcing our right to apply funds in your account to your obligations that are in default, we do not waive our right to enforce these rights at a later time.

**21. LEGAL PROCESS -** If any legal action is brought against your account, we may pay out funds according to the terms of the action or refuse any payout until the dispute is resolved. Any expenses or attorney fees we incur responding to legal process may be charged against your account without notice, unless prohibited by law. Any legal process against your account is subject to our lien and security interest.

**22. ACCOUNT INFORMATION -** Upon request, we will give you the name and address of each agency from which we obtain a credit report regarding your account. We agree not to disclose account information to third parties except when: (1) it is necessary to complete a transaction; (2) the third party seeks to verify the existence or condition of your account in accordance with applicable law; (3) such disclosure complies with the law or a government agency or court order; or (4) you give us written permission.

**23. NOTICES -**

**a.  Name or Address Changes.** You are responsible for notifying us of any address or name change. The credit union is only required to attempt to communicate with you at the most recent address you have provided to us. We may require all name and address changes to be provided in writing. If we attempt to locate you, we may impose a service fee as set forth in the Truth-in-Savings Disclosure or Schedule of Fees and Charges.

**b.  Notice of Amendments.** Except as prohibited by applicable law, we may change the terms of this Agreement. We will notify you of any change in terms, rates, or fees as required by law. We reserve the right to waive any term in this Agreement. Any such waiver shall not affect our right to future enforcement.

**c.  Effect of Notice.** Any written notice you give us is effective when we receive it. Any written notice we give to you is effective when it is deposited in the U.S. mail, postage prepaid and addressed to you at your statement mailing address. Notice to any account owner is considered notice to all account owners.

**d.  Electronic Notices.**  If you have agreed to receive notices electronically, we may send you notices electronically and discontinue mailing paper notices to you until you notify us that you wish to reinstate receiving paper notices.

**24. TAXPAYER IDENTIFICATION NUMBERS AND BACKUP WITHHOLDING -** Your failure to furnish a correct Taxpayer Identification Number (TIN) or meet other requirements may result in backup withholding. If your account is subject to backup withholding, we must withhold and pay to the Internal Revenue Service (IRS) a percentage of dividends, interest, and certain other payments. If you fail to provide your TIN, we may suspend opening your account.

**25. STATEMENTS -**

**a.  Contents.** If we provide a periodic statement for your account, you will receive a periodic statement of transactions and activity on your account during the statement period as required by applicable law. If a periodic statement is provided, you agree that only one statement is necessary for joint accounts. For share draft or checking accounts, you understand and agree that your original check or draft, when paid, becomes property of the credit union and may not be returned to you, but copies may be retained by us or be payable through financial institutions and made available upon your request. You understand and agree that statements are made available to you on the date they are sent to you. You also understand and agree that checks, drafts or copies thereof are made available to you on the date the statement is sent to you, even if the checks or drafts do not accompany the statement.

**b.  Examination.** You are responsible for promptly examining each statement upon receiving it and reporting any irregularities to us. If you fail to report any irregularities such as forged, altered, unauthorized, unsigned, or otherwise fraudulent items drawn on your account, erroneous payments or transactions, or other discrepancies reflected on your statement within thirty-three (33) days of the date we sent the statement to you, we will not be responsible for your loss.  We also will not be liable for any items that are forged or altered in a manner not detectable by a reasonable person, including the unauthorized use of a facsimile signature machine.

**c.  Notice to Credit Union.** You agree that the credit union's retention of checks or drafts does not alter or waive your responsibility to examine your statements or the time limit for notifying us of any errors. The statement will be considered correct for all purposes and we will not be liable for any payment made or charged to your account unless you notify us in writing within the above time limit for notifying us of any errors. If you fail to receive a periodic statement, you agree to notify us within fourteen (14) days of the time you regularly receive a statement.

**26. INACTIVE ACCOUNTS -** If your account falls below any applicable minimum balance and you have not made any transactions over a period specified in the Truth-in-Savings Disclosure or Schedule of Fees and Charges, we may classify your account as inactive or dormant. Unless prohibited by applicable law, we may charge a service fee as set forth in the Truth-in-Savings Disclosure or Schedule of Fees and Charges for processing your inactive account. If we impose a fee, we will notify you, as required by law, at your last known address. If we impose a fee, we will notify you, as required by law, at your last known address. You authorize us to transfer funds from another account of yours to cover any service fees, if applicable. To the extent allowed by law, we reserve the right to transfer the account funds to an account payable and to suspend any further account statements. If a deposit or withdrawal has not been made on the account and we have had no other sufficient contact with you within the period specified by state law, the account will be presumed to be abandoned. Funds in abandoned accounts will be reported and remitted in accordance with state law. Once funds have been turned over to the state, we have no further liability to you for such funds and if you choose to reclaim such funds, you must apply to the appropriate state agency.

**27. SPECIAL ACCOUNT INSTRUCTIONS -** You may request that we facilitate certain trust, will, or court-ordered account arrangements. However, because we do not give legal advice, we cannot counsel you as to which account arrangement most appropriately meets the specific requirements of your trust, will, or court order. If you ask us to follow any instructions that we believe might expose us to claims, lawsuits, expenses, liabilities, or damages, whether directly or indirectly, we may refuse to follow your instructions or may require you to indemnify us or post a bond or provide us with other protection. Account changes requested by you, or any account owner, such as adding or closing an account or service, must be evidenced by a signed Account Change Card and accepted by us.

**28. TERMINATION OF ACCOUNT -** We may terminate your account at any time without notice to you or may require you to close your account and apply for a new account if: (1) there is a change in owners or authorized signers; (2) there has been a forgery or fraud reported or committed involving your account; (3) there is a dispute as to the ownership of the account or of the funds in the account; (4) any checks or drafts are lost or stolen; (5) there are excessive returned unpaid items not covered by an overdraft protection plan; (6) there has been any misrepresentation or any other abuse of any of your accounts; or (7) we reasonably deem it necessary to prevent a loss to us. You may terminate an individual account by giving written notice. We reserve the right to require the consent of all owners to terminate a joint account. We are not responsible for payment of any check, draft, withdrawal, or other item after your account is terminated; however, if we pay an item after termination, you agree to reimburse us.

**29. TERMINATION OF MEMBERSHIP -** You may terminate your membership by giving us written notice or by withdrawing your minimum required membership share, if any, and closing all your accounts. You may be denied services for causing a loss to the credit union or you may be expelled for any reason as allowed by applicable law.

**30. DEATH OF ACCOUNT OWNER -** We may continue to honor all transfer orders, withdrawals, deposits and other transactions on an account until we know of a member's death. Once we know of a member's death, we may pay checks or drafts or honor other payments or transfer orders authorized by the deceased member for a period of ten (10) days after that date unless we receive instructions from any person claiming an interest in the account to stop payment on the checks, drafts or other items. We may require anyone claiming a deceased owner's account funds to indemnify us for any losses resulting from our honoring that claim. This Agreement will be binding upon any heirs or legal representatives of any account owner.

**31. SEVERABILITY -** If a court holds any portion of this Agreement to be invalid or unenforceable, the remainder of this Agreement shall not be invalid or unenforceable and will continue in full force and effect. All headings are intended for reference only and are not to be construed as part of the Agreement.

**32. ENFORCEMENT -** You are liable to us for any losses, costs or expenses we incur resulting from your failure to follow this Agreement. You authorize us to deduct any such losses, costs or expenses from your account without prior notice to you. If we bring a legal action to collect any amount due under or to enforce this Agreement, we shall be entitled, subject to applicable law, to payment of reasonable attorney's fees and costs, including fees on any appeal, bankruptcy proceedings, and any post-judgment collection actions.

**33. GOVERNING LAW -** This Agreement is governed by the credit union's bylaws, federal laws and regulations, the laws, including applicable principles of contract law, and regulations of the state in which the credit union's main office is located, and local clearinghouse rules, as amended from time to time. As permitted by applicable law, you agree that any legal action regarding this Agreement shall be brought in the county in which the credit union is located.

**34. NEGATIVE INFORMATION NOTICE - We may report information about your loan, share or deposit accounts to credit bureaus. Late payments, missed payments, or other defaults on your accounts may be reflected in your credit report.**

©  CUNA Mutual Group, 1993, 2007 ALL RIGHTS RESERVED                                      24454 D10175 (DNYCH1) 07/13/2007