UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

FELICIA WATSON,

                                   Plaintiff,

               v.

SUFFOLK FEDERAL CREDIT UNION,

                                  Defendant.

**MEMORANDUM AND ORDER**
20-cv-1531 (LDH)(CLP)

---

LaSHANN DeARCY HALL, United States District Judge:

Plaintiff Felicia Watson brings the instant action on behalf of herself and all others similarly situated against Defendant Suffolk Federal Credit Union seeking relief for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) unjust enrichment; and (4) violations of the New York General Business Law § 349 ("GBL § 349"). Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

## BACKGROUND[1]

Plaintiff holds a checking account with Defendant, a credit union that provides financial services to its customers. (Compl. ¶¶ 5–6.) When consumers open checking accounts with Defendant, they enter into Defendant's standard contract (the "Agreement"). (*Id.* ¶ 1; *id.*, Ex. B.) The Agreement includes a provision setting forth Defendant's policy and procedures for when a customer's account does not contain sufficient funds to cover transactions and when a "non-sufficient funds" fee ("NSF") may be charged as a result.[2] (*See id.* ¶¶ 20–26.)

---

[1] The following facts are taken from the complaint and are assumed to be true for purposes of deciding the instant motion.

[2] The Agreement and Defendant's fee schedule (the "Fee Schedule") are incorporated into the complaint by reference. (*See id.* Exs. A, B.) "It is well established that '[d]ocuments that are attached to the complaint or

Specifically, the Agreement's "overdrafts" section (the "Overdraft Provision") provides:

> If, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a check, draft, item, transaction or other items posted to your account plus any applicable fee ("overdraft"), [Defendant] may pay or return the overdraft. The credit union's determination of an insufficient available account balance may be made at any time between presentation and the credit union's midnight deadline with only one review of the account required. [Suffolk] do[es] not have to notify you if your account does not have sufficient available funds to pay an overdraft. Your account may be subject to a charge for each overdraft regardless of whether [Defendant] pay[s] or return[s] the overdraft . . . If [Defendant] pay[s] an overdraft or impose[s] a fee that overdraws your account, you agree to pay the overdrawn amount in accordance with your overdraft protection plan or, if you do not have such a plan, in accordance with our overdraft payment policy.

(*Id.*, Ex. B ¶ 14(a).)

Further, Defendant's Fee Schedule states that Defendant will charge its checking account customers a $32.00 NSF fee "per item[.]" (*Id.*, Ex. A at 3 ("Fee Schedule").) The Fee Schedule further states that "[f]ees for overdrawing your account may be imposed on each check, draft, item . . . or any other electronic withdrawal or transfer transaction that is drawn on an insufficient available account balance." *Id.* at 2.

On June 17, 2019, Plaintiff attempted to make a single Automated Clearing House ("ACH") payment to American Express from her checking account with Defendant. (*Id*. ¶ 14.) Defendant rejected the payment due to insufficient funds and charged Plaintiff a $32 NSF fee. (*Id*. ¶ 15.) On June 18, 2019, and again on June 19, 2019, unbeknownst to Plaintiff and without her request, Defendant processed the ACH payment and assessed Plaintiff another $32 NSF fee when the payments did not go through. (*Id*. ¶¶ 16–17.) The latter two fees were labeled as "RETRY PYMT" on Plaintiff's account statement. (*Id.*) In total, Defendant assessed $96 in fees from Plaintiff related to the single ACH payment to American Express. (*Id*. ¶ 18.) The same

---

incorporated in it by reference are deemed part of the pleading and may be considered.'" *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

pattern occurred with other payments attempted on June 3, 2019, June 5, 2019, April 10, 2019, and April 16, 2019.  (*Id.* ¶ 19.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct.  *Id.*  While this standard requires more than a "sheer possibility" of defendants' liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true[.]"  *Id.* (citation omitted).

## DISCUSSION

### I.   PREEMPTION

Defendant contends that Plaintiff's state law claims are preempted by the Federal Credit Union Act ("FCUA"), the Truth in Savings Act ("TISA"), and their implementing regulations and that the Court thus lacks subject matter jurisdiction over the claims.  (Def.'s Pre-Mot. Conf. Ltr. ("Def.'s PMC Ltr.") at 2–3, ECF No. 14.)  Not so.

It is true that "[t]he laws of the United States are 'the supreme Law of the Land[,] . . . any [t]hing in the Constitution or Laws of any State to the Contrary notwithstanding.'"  *Coal. for Competitive Elec., Dynergy Inc. v. Zibelman*, 906 F.3d 41, 49 (2d Cir. 2018) (quoting U.S. Const. art. VI cl. 2), *cert. denied sub nom. Elec. Power Supply Ass'n v. Rhodes*, 139 S. Ct. 1547

3

(2019).  "Congress therefore may preempt state law through federal legislation."  *Id.*  Nevertheless, "federally chartered [financial institutions] are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or purposes" of federal statutes.  *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 12 (2007).  And, importantly, "contracts made by [federal financial institutions] 'are governed and construed by State laws.'" *Id.* at 11 (citation omitted).  The Court's "inquiry into the scope of a [federal] statute's pre-emptive effect is guided by the rule that the purpose of Congress is the ultimate touchstone in every pre-emption case." *Id.* (quoting *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008)).

Of relevance here, Congress enacted the FCUA in 1934, authorizing the creation of federally-chartered credit unions and creating the National Credit Union Administration ("NCUA") to supervise those credit unions.  *See* 12 U.S.C. § 1751, preamble; 12 U.S.C. § 1752a.  Similarly, Congress enacted TISA to "require the clear and uniform disclosure of . . . (1) the rates of interest which are payable on deposit accounts by depository institutions; and (2) the fees that are assessable against deposit accounts, so that consumers can make a meaningful comparison between the competing claims of depository institutions with regard to deposit accounts." 12 U.S.C. § 4301.  NCUA regulations provide that a "[f]ederal credit union may, *consistent with. . . its contractual obligations*, determine the types of fees or charges and other matters affecting the opening, maintaining and closing of a share, share draft or share certificate account."  12 C.F.R. § 701.35(c) (emphasis added).  The regulation further states that "[s]tate laws regulating such activities are not applicable to federal credit unions."  *Id.*

Considering similar claims involving NSF fees and credit unions, the court in *Lussoro v. Ocean Financial Federal Credit Union* explained that where a plaintiff's "claim rests on the

4

contention that Defendant's representations about its overdraft fees policies were misleading" rather than "a claim that directly challenges the method by which Defendant decides to impose overdraft fees," the claim is not preempted. 456 F. Supp. 3d 474, 488 (E.D.N.Y. 2020). The Court agrees. That is because "[w]hile federal credit unions have the discretion to determine fee practices and disclosures free from state regulation inconsistent with the FCUA, the TISA, and their implementing regulations, federal credit unions must still comply with the terms of their contracts related to fee practices and not affirmatively misrepresent those practices." *Lambert v. Navy Fed. Credit Union*, No. 1:19-CV-103, 2019 WL 3843064, at *3 (E.D. Va. Aug. 14, 2019); *see also Lussoro*, 456 F. Supp. 3d at 488.

Here, Plaintiff is not challenging Defendant's ability to charge NSF fees altogether or the way Defendant determines what those fees will be; Plaintiff's claims instead arise out of Defendant's alleged breach of the Agreement and misrepresentations Defendant allegedly made to consumers regarding its NSF fees. In determining whether Plaintiff's claims conflict with the FCUA and TISA, it bears mentioning that the applicable regulation explicitly recognizes that federal credit unions must determine the types of fees they charge "consistent with . . . [their] contractual obligations." 12 C.F.R. § 701.35(c). Plaintiff's claims—rooted in contract and New York's consumer protection laws—do not conflict with these statutes and are therefore not preempted. *See, e.g.*, *Baldanzi v. WFC Holdings Corp.*, No. 07 Civ. 9551, 2008 WL 4924987, at *2 (S.D.N.Y. Nov. 14, 2008) ("In contrast to findings of federal preemption in cases involving specific state regulations that conflict with the [National Banking Act], causes of action sounding in contract, consumer protection statutes and tort have repeatedly been found by federal courts not to be preempted.").

5

Defendant's reliance on *Whittington v. Mobiloil Federal Credit Union* is misplaced. (*See* Def.'s PMC Ltr. at 1.) There, plaintiff did not bring a breach of contract claim based on the defendant's NSF fee practices but instead claimed "the manner in which [defendant] manage[d] overdrafts and assesse[d] overdraft fees [were] unfair and unconscionable." *Whittington v. Mobiloil Fed. Credit Union*, No. 1:16-CV-482, 2017 WL 6988193, at *8 (E.D. Tex. Sept. 14, 2017). That is not the case here. In fact, the court in *Whittington* made clear that plaintiff's claims were not preempted where they were based upon affirmative misrepresentations, as Plaintiff's claims are here. *See id.* at *17 ("[H]owever, [plaintiff's fraud claims] are not preempted and are sufficiently pleaded where they are based upon affirmative misrepresentation and the sufficient funds theory."). In other words, *Whittington* supports the Court's conclusion here.

## II.   THE TERMS OF THE AGREEMENT

Defendant argues that Plaintiff's breach of contract claim should be dismissed because the Agreement expressly and unambiguously entitles Defendant to assess Plaintiff NSF fees based on the number of days there are insufficient funds in Plaintiff's account rather than the number of items charged. Here again, the Court disagrees.

A court may dismiss a breach of contract claim at the motion to dismiss stage "only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016)). Contractual terms are unambiguous if they have "a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion." *Met. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) (quotation marks omitted). Conversely, "a contract is ambiguous if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement

6

and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (quotation marks omitted).[3]  Importantly, at this stage, the Court should "resolve any contractual ambiguities in favor of the plaintiff." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

Here, the Agreement reads in relevant part that: "If, on any day, the available funds in your share or deposit account are not sufficient to pay the full amount of a check, draft, item, transaction or other items posted to your account plus any applicable fee ('overdraft'), [defendant] may pay or return the overdraft."  (Overdraft Provision.)  Notably, neither the Agreement nor the Fee Schedule defines the term "item" or otherwise provides guidance on how "item" is to be interpreted.  Defendant maintains that the plain and unambiguous terms of the Agreement operate to defeat Plaintiff's breach of contract claim.  (Def.'s PMC Ltr. at 2.) Specifically, Defendant contends (1) the phrase "on any day" in the Overdraft Provision allows Defendant to assess a fee each day an item is presented for payment and there are insufficient funds in the account on that day; and that (2) each time a merchant—rather than the credit union—processes an ACH request represents a new "item" or "transaction" under the Agreement even if related to a single attempt by a customer to make a payment.  *Id.*  In opposition, Plaintiff argues that, pursuant to the Fee Schedule and the Agreement's Overdraft Provision, only a single NSF fee should be charged "per item," and that an ACH request made by a customer represents a

---

[3] In their briefing, both Plaintiff and Defendant refer the Court to New York law with respect to the interpretation of the Agreement. (Def.'s PMC Ltr. at 2; Pl.'s Pre-Mot. Conf. Resp. ("Pl.'s PMC Resp.") at 2, ECF No. 15.) Accordingly, it appears both parties agree that New York law applies.  "This shared premise is sufficient to establish the applicable choice of law." *Deer Mountain Inn LLC v. Union Ins. Co*., No. 1:20-cv-0984, 2021 WL 2076218, at *5 (N.D.N.Y. May 24, 2021) (quotation marks omitted) (citing *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)); *see also Krumme v. WestPoint Stevens Inc.,* 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'").

single item regardless of how many times that request is processed. (Pl.'s PMC Resp. at 2.) Both parties' arguments have some merit.

Ultimately, the Court is not convinced that the phrase "on any day" unambiguously allows Defendant to charge multiple NSF fees for a single ACH transfer request made by a customer. On the one hand, the Fee Schedule and Overdraft Provision may reasonably be interpreted to allow Defendant to charge only one NSF fee related to an ACH request by a customer regardless of how many times that transaction is processed. On the other hand, it is also reasonable to read "item" to mean any request for payment made by a customer or an authorized third party. The Agreement is ambiguous.[4]

Because any ambiguities must be resolved in Plaintiff's favor, Defendant's motion to dismiss the breach of contract claim is denied.

## III. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AND UNJUST ENRICHMENT

Defendant argues that both Plaintiff's breach of the covenant of good faith and fair dealing claim and unjust enrichment claim must be dismissed as duplicative of Plaintiff's breach of contract claim. (Def.'s PMC Ltr. at 3.) The Court agrees.

---

[4] The Court's conclusion is consistent with other courts that have considered similar language and found it to be ambiguous. *See, e.g.*, *McNeil v. Capital One Bank, N.A.*, No. 19-cv-00473, 2020 WL 5802363, at *2 (E.D.N.Y. Sept. 29, 2020) (denying motion to dismiss breach of contract claim where both parties offered "reasonable interpretations" regarding whether each request for a payment to be processed constitutes a separate "item" such that a bank may assess multiple NSF fees on a transaction that is processed multiple times); *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 640 (S.D.N.Y. 2020) (denying motion to dismiss because the definition of the word "item" is "ambiguous with regard to whether a resubmission of an ACH transaction is a separate item or is part of the same initial ACH transaction, and that ambiguity must be read in favor of Plaintiffs at [the motion to dismiss] stage."); *Coleman v. Alaska USA Fed. Credit Union*, No. 3:19-CV-0229, 2020 WL 1866261, at *4 (D. Alaska Apr. 14, 2020) (denying defendant's motion for dismiss where "it is plausible that a member could have expected to only be charged one NSF fee when she only gave one authorization for an ACH transaction . . ."). In an effort to convince the Court that the language is unambiguous, Defendant's direct the Court to *Lambert*. *Lambert*, however, is inapposite. The agreement in *Lambert* defined "item" to include "all [ACH] debits," and warned customers that "[a]n ACH debit might be made as a result of an authorization you gave a third party to automatically transfer funds from your account[.]" 2019 WL 3843064, at *3. The court thus found the agreement allowed the credit union defendant to assess an NSF fee each time a rejected ACH request was processed. *Id.* at *5. No similar limiting language is present in the Agreement here.

8

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Doyle v. Mastercard Int'l Inc.*, 700 F. App'x 22, 24 (2d Cir. 2017) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)). "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013). Similarly, "[w]here . . . the claim for unjust enrichment seeks the same relief as is sought for breach of contract, the unjust enrichment claim is properly dismissed as duplicative." *LG Capital Funding, LLC v. Ubiquity, Inc.*, 2017 WL 3173016, at *3 (E.D.N.Y. May 12, 2017) (citation omitted). "[C]laims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quotation marks omitted).

Plaintiff attempts to distinguish her claim for the breach of the covenant of good faith and fair dealing from her breach of contract claim by arguing that the former is based on Defendant's abuse of discretion in unilaterally construing the word "item" in a way a reasonable consumer does not anticipate whereas the latter is based on an "express" breach. (Pl.'s PMC Resp. at 3.) The Court is not persuaded. Tellingly, Plaintiff does not even attempt to distinguish her unjust enrichment claim from her contract claim and instead argues that she is permitted to plead this claim in the alternative. (*Id.*) This argument is without merit.

At bottom, Plaintiff's breach of the covenant of good faith and fair dealing and her unjust enrichment claims arise from the same set of facts and underlying contractual dispute regarding the interpretation of the term "item" as her breach of contract claim. Put simply, the claims are

9

impermissibly duplicative. *See Perks*, 444 F. Supp. 3d at 641 ("Plaintiffs' argument that [defendant] breached the implied covenant by using its discretion to interpret the ambiguous contract terms in bad faith is simply a repackaging of their breach of contract theory . . . [t]he implied covenant . . . is directed to the parties' promised performances, not their interpretations of the contract."); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) ("[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action.").[5]

Accordingly, Defendant's motion to dismiss Plaintiff's breach of the covenant of good faith and fair dealing claim and her unjust enrichment claim is granted.

## IV.    GBL § 349

Finally, Defendant argues that Plaintiff's claim under GBL § 349 should be dismissed because Defendant's "fee practices follow a clear contractual provision and therefore cannot be misleading." (Def's. PMC Ltr. at 3.)  Because the Court finds the Agreement to be ambiguous, Defendant's argument is unpersuasive.

To make out a prima facie case under GBL § 349, Plaintiff "must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).  Importantly, "[c]ourts have generally held that since this second factor requires a reasonableness analysis, it cannot be resolved on a motion to dismiss." *Buonasera v.*

---

[5] And, while it is true that a plaintiff may plead an unjust enrichment claim in the alternative to a breach of contract claim, "New York courts have repeatedly dismissed unjust enrichment claims where there is no allegation that the contract at issue is invalid and the subject matter of the dispute is covered by the contract." *Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 337 (E.D.N.Y. 2016).  Here, Plaintiff does not challenge the validity of the Agreement nor does she plead any facts to suggest her unjust enrichment claim is based on facts separate from her breach of contract claim.

*Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) (collecting cases). Citing no case law, Defendant summarily argues that its practices were not misleading.

      Having reviewed the Complaint, the Court finds Plaintiff sufficiently alleges that Defendant's conduct is misleading under GBL § 349. Specifically, Plaintiff alleges that a reasonable consumer would be misled by the language of the Agreement with respect to the number of NSF fees Defendant may charge and that Defendant's conduct is contrary to reasonable and industry-wide expectations concerning NSF fees. (Compl. ¶¶ 10–11, 32–38). That is sufficient to survive a motion to dismiss. *See, e.g.*, *Lussoro*, 456 F. Supp. 3d at 488 (finding Plaintiff's allegations that "the [Agreement] materially mislead a reasonable consumer into thinking that Defendant will only assesses [sic] overdraft fees when transactions overdraw a customer's account, when that is not the case in practice . . . sufficient to allege that Defendant's conduct is materially misleading"); *Kelly v. Cmty. Bank, N.A.*, No. 19-CV-919, 2020 WL 777463, at *9 (N.D.N.Y. Feb. 18, 2020) ("[T]he Court finds that Defendant's representation in the Account Agreement and associated documents, while not intentionally misleading, could mislead a reasonable consumer acting reasonably under the circumstances."). Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's GBL § 349 claim.

## CONCLUSION

      For the foregoing reasons, Defendant's motion to dismiss for failure to state a claim is DENIED in part and GRANTED in part. Specifically, the Court DENIES Defendant's motion to dismiss Plaintiff's breach of contract claim and Plaintiff's GBL § 349 claim and GRANTS

Defendant's motion to dismiss Plaintiff's breach of the covenant of good faith and fair dealing and unjust enrichment claims.

SO ORDERED.

Dated: Brooklyn, New York
   February 22, 2022

/s/ LDH
L<small>A</small>SHANN D<small>E</small>ARCY HALL
United States District Judge